IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY JOHNSON                     :
                                 :
                                 :
    v.                           :   Civil Action No. DKC 09-0787
                                 :
UNITED STATES OF AMERICA         :
                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action is the "joint motion to alter or amend the judgment" filed by Plaintiff and Counterclaim Defendant Mary Johnson and Additional Counterclaim Defendant Ford Johnson. (ECF No. 103). The issues are fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be denied.

**I. Background**

The following facts are an abbreviated version of those set forth in the court's earlier memorandum opinion, which granted the motions for summary judgment filed by Defendant and Counterclaim Plaintiff the United States of America. (ECF No. 99). Ford and Mary Johnson are husband and wife. Both have been involved with Koba Institute ("Koba" or "the corporation"), an organization that Mr. Johnson originally founded to perform various government contracts. Since 1998, Mrs. Johnson has been

the corporation's sole shareholder; she appointed herself as chairperson of the board in 2001. The corporate bylaws provided that the board chairperson would also serve as Koba's president. Because the Johnsons had agreed that Mrs. Johnson would be the primary caregiver to the couple's children, however, she delegated her authority in the corporation to Mr. Johnson, and he was appointed as president. Mrs. Johnson has since served as Koba's vice president.

Despite her limited involvement in the corporation's daily affairs, Mrs. Johnson has had authority to write checks from Koba's bank accounts without needing another signatory since 2001. From 2001 through 2004, she received a six-figure salary, a corporate car, and a cell phone. On the infrequent occasions that she came to the office, Mrs. Johnson would approve board resolutions, such as ratification of Mr. Johnson's actions on behalf of the corporation, and perform tasks in the human resources department. Mr. Johnson, who received no direct salary from Koba and was compensated in the form of rent payments on the couple's home, oversaw the corporation's daily activities, including issues relating to its payroll taxes. When Mr. Johnson was away from the office, Mrs. Johnson would manage Koba's affairs based on explicit instructions provided by Mr. Johnson. For instance, she would only sign checks that Mr. Johnson had already expressly approved.

Near the end of 2004, the Internal Revenue Service ("IRS") notified Mrs. Johnson that Koba had not paid its payroll taxes for several quarters during 2001, 2002, 2003, and 2004. Upon receipt of this notice, Mrs. Johnson had "a serious talk" with Mr. Johnson and "told him" the situation was "unacceptable." (ECF No. 94-7, at 18, 36). She then proceeded to "fire[] the finance director," who had previously been tasked with making payroll tax payments, and "directed Mr. Johnson to personally handle all future tax payments as of January 2005." (ECF No. 1 ¶ 16). She also "required" Mr. Johnson to submit "visual proof" of all tax payments Koba made. (*Id.*). Because Koba did not pay these outstanding payroll taxes in full, the IRS assessed trust fund recovery penalties against the Johnsons pursuant to 26 U.S.C. § 6672.

On March 30, 2009, after paying a small amount toward her assessment, Mrs. Johnson filed a suit in this court seeking a refund. The Government answered the complaint and filed a counterclaim against both of the Johnsons to reduce its assessments to judgment. Following discovery and an unsuccessful settlement conference, the Government moved for summary judgment against the Johnsons in October 2011. (ECF Nos. 80-81). The day after filing its summary judgment motions, the Government also preemptively moved to strike the reports and testimony of Leo Bruette, an accountant on whom it believed the

Johnsons would rely in opposing summary judgment, on the ground that his reports and testimony did not satisfy Federal Rule of Evidence 702. (ECF No. 82). The Johnsons thereafter jointly opposed the motion to strike, and the Government replied to their opposition. On November 28, 2011, one month after opposing the motion to strike, the Johnsons submitted oppositions to the Government's summary judgment motions. Mr. Johnson also moved for "partial summary judgment" against the Government on the same day. (ECF No. 93). None of the Johnsons' submissions included – or even referenced – Mr. Bruette's reports. The Government thereafter replied to each of these filings.

On March 22, 2012, the court issued a memorandum opinion and order granting the Government's motions for summary judgment against the Johnsons, denying Mr. Johnson's cross-motion for summary judgment, and denying as moot the motion to strike. (ECF Nos. 99, 100). The opinion explained that the Johnsons' failure to rely on Mr. Bruette's reports precluded the Johnsons from creating any disputes of material fact based upon those reports and rendered the motion to strike moot. Judgment was entered against Mr. Johnson and Mrs. Johnson in the amounts of $240,071.12, and $304,355.90, respectively, plus interest accruing since August 22, 2011. In response to concerns regarding the potential for "double recovery" against the

Johnsons (ECF No. 99, at 45), the court's order required these judgments to "be reduced to the extent that the [Government] has collected or will collect on those debts pursuant to the offer in compromise it approved with Koba Institute," (ECF No. 100, at 2).

Twenty-eight days later, on April 19, 2012, the Johnsons filed a joint motion to alter or amend the judgment, asserting that the court erred in failing to consider Mr. Bruette's reports when resolving the summary judgment motions. (ECF No. 103).[1] The Government has opposed this motion in its entirety.

## II. Standard of Review

A motion to alter or amend the judgment filed within twenty-eight days of the entry of judgment is evaluated pursuant to Federal Rule of Procedure 59(e). Fed.R.Civ.P. 59(e); *MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 280 (4th Cir. 2008). "In general, 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting 11 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2810.1, at 124 (2$^d$ ed. 1995)). As a result, courts have recognized only three limited grounds

---

[1] In the interim, the Johnsons also filed a joint motion for extension of time to file a motion for reconsideration, which the court denied on April 5, 2012. (ECF No. 102).

5

for granting a motion to reconsider pursuant to Federal Rule of Civil Procedure 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct clear error of law or prevent manifest injustice. *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (citing *Pac. Ins.*, 148 F.3d at 403). Additionally, it is axiomatic that a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins.*, 148 F.3d at 403 (quoting *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995)).

**III. Analysis**

The Johnsons have moved to alter or amend the judgment by contending that the court erred in two principal ways in resolving the motions for summary judgment and to strike. First, they assert that the court erred by failing to consider Mr. Bruette's reports in its resolution of the summary judgment motions. Second, they maintain that the court should have held oral argument before deciding those motions. According to the Johnsons, these errors have led to manifest injustice, thus requiring reconsideration of the court's March 22, 2012, memorandum opinion and order. Both of these arguments – which

merely seek a second bite at the summary judgment apple - are patently without merit.

   **A. No Error Resulted From the Court's Failure to Consider Arguments and Evidence Not Presented by the Johnsons on Summary Judgment**

The Johnsons begin by arguing that the court must alter or amend the judgment because it failed to account for inaccuracies in the § 6672 assessments and ultimate judgments.[2] According to the Johnsons, Mr. Bruette's reports demonstrate these inaccuracies or, at the very least, raise genuine disputes of

---

[2] The Johnsons' motion also repeatedly requests that the court provide a more detailed "methodology" regarding the application of certain payments against the judgments. This request could be construed in two ways. First, it could be construed as an argument that certain payments Koba has already made voluntarily or pursuant to the offer in compromise must now be used to reduce the judgments against the Johnsons. Such an argument, however, is simply another thinly-veiled attempt to have the court reconsider the judgments against the Johnsons based on the information in Mr. Bruette's reports, rather than actually clarify any language within its previous order. For the reasons discussed in this memorandum opinion, this effort must be rejected.

The second construction of this "methodology" argument relates to the application of future payments made pursuant to the offer in compromise. The reply memorandum suggests that the Johnsons may be asking the court to require the IRS to apply all such payments to reduce the judgments in this case. (*See* ECF No. 105, at 2) (describing "the central question that needs to be answered" as "what portion of the OIC payments will be applied to reduce the Judgment amount in issue here?"). The Johnsons, however, identify no authority in support of such a request, and this omission is telling in light of the plain language of the offer in compromise: "If the offer is accepted, the IRS will apply payments made after acceptance in the best interest of the government." (ECF No. 82-11, at 5).

7

material fact on these issues which render summary judgment in the Government's favor improper. This argument, however, suffers from one salient flaw – notably, the Johnsons' wholesale failure either to present or support these arguments with evidence in response to the Government's summary judgment motions.[3]

With regard to the § 6672 assessments, the Government asserted in its summary judgment motions that tax assessments were presumed correct upon submission of certified copies of the certificates of assessment ("Form 4340") and that the Johnsons bore the burden of demonstrating that these assessments were erroneous. (ECF No. 80-1, at 17 (citing *United States v. Pomponio*, 635 F.2d 293, 296 (4th Cir. 1980); ECF No. 81-1, at 9 (citing *Pomponio*, 635 F.2d at 296)).[4] Despite the Government's

---

[3] The Johnsons contend that the Government will suffer no prejudice from reconsideration of the judgments against them. This argument fails not only because permitting the Johnsons to present arguments and evidence not previously raised would arguably prejudice the Government, but also because prejudice to the non-moving party is not part of the calculus under Rule 59(e).

[4] The Johnsons' motion for reconsideration discusses the tax assessments and resulting judgments interchangeably. These terms, however, are distinct. The § 6672 assessments are stagnant and represent the amount of trust fund recovery penalties initially made by the IRS against the Johnsons. The judgments against the Johnsons, however, represent their *current* tax liabilities pursuant to § 6672 after accounting for payments, interest, penalties, and other adjustments that have occurred since the dates of assessment.

8

statement in the motion to strike anticipating that the Johnsons would use Mr. Bruette's reports to create a factual dispute regarding the accuracy of the assessments (ECF No. 82-2, at 2 n.1), neither of their opposition papers even remotely addressed this issue.[5]  Indeed, Mr. Johnson even went so far as to state that "[t]he only relevant issue regarding [his] alleged liability . . . . [was] whether the Government ha[d] timely and properly preserved its claim," noting that he would "not address" any other issues presented in the Government's motion for summary judgment.  (ECF No. 92, at 2).  Because the Johnsons had the ultimate burden of proof as to the accuracy of the § 6672 assessments and failed to address the issue in any way in opposing summary judgment, they abandoned this argument.  *See Ferdinand-Davenport v. Children's Guild*, 742 F.Supp.2d 772, 777-78 (D.Md. 2010); *Mentch v. E. Sav. Bank, FSB*, 949 F.Supp. 1236,

---

[5] The Johnsons contend that their summary judgment briefs contained "direct assertions . . . regarding the inaccuracy of the assessments."  (ECF No. 103, at 7).  The court's own detailed review of the Johnsons' opposition papers reveals no such assertions.  To the extent the Johnsons intend to rely upon Mrs. Johnson's fleeting reference to double recovery and Mr. Johnson's discussion of procedural irregularities as such "direct assertions" (*id.* at 7-8), this effort would strain credulity.  The concerns about double recovery based on payments made *since the date of the assessment* do not implicate the amount of the assessment itself.  Similarly, Mr. Johnson's discussion of procedural irregularities surrounding the assessment relates only to the timeliness of the assessment, not the *amount of the assessment*, which the Johnsons now seek to contest.

1246-47 (D.Md. 1997).[6]  As a result, they are also precluded from raising it at this stage of the proceedings.  *Reliance Ins. Co. v. Doctors Co.*, 299 F.Supp.2d 1131, 1154 (D.Haw. 2003), *aff'd*, 132 F.App'x 730 (9th Cir. 2005).

With regard to the amount of the judgments against the Johnsons, the Government's summary judgment motions requested judgment in specific amounts, and it supported these requests with exhibits containing copies of the Johnsons' tax transcripts.  (ECF No. 80, at 2; ECF No. 80-9; ECF No. 81, at 2; ECF No. 81-9).  As noted above, Mr. Johnson expressly declined to address any issue on summary judgment other than whether the Government had preserved its claim against him.  "Failure to raise issues in opposition to summary judgment functions as a waiver."  *Reliance Ins. Co.*, 299 F.Supp.2d at 1154.  Mr. Johnson may not, therefore, now seek to present a new legal theory in order to contest the judgment entered against him.  *Id.*; *Pac. Ins.*, 148 F.3d at 403.

---

[6] The Johnsons assert that briefing on the motion to strike "fully engaged the substance of the parties' factual disputes" regarding the accuracy of the § 6672 assessments.  (ECF No. 103, at 6).  This assertion flatly misstates the nature of the arguments presented with regard to the motion to strike.  The parties' memoranda addressed the admissibility of Mr. Bruette's reports or testimony pursuant to Federal Rule of Evidence 702, not the accuracy of the tax assessments against the Johnsons.

Mrs. Johnson also did not directly contest the requested judgment against her, instead making only a fleeting reference to the potential for a "double recovery" in the introduction to her opposition. (ECF No. 94-1, at 6). Focusing her arguments on whether she qualified as a responsible person or acted willfully in failing to pay Koba's outstanding payroll taxes, Mrs. Johnson asked the court to consider *these issues* "against the backdrop of [the United States'] recovery of 100% of the trust fund penalty" from unspecified voluntary payments and Koba's past and future payments made pursuant to the 2010 offer in compromise. (*Id.*) (emphasis added). Mrs. Johnson made no further mention of this double recovery argument in her opposition and identified no evidence in support of it. Accordingly, the court entered judgment against her.

Mrs. Johnson now vigorously asserts – without citation to legal authority – that her unsupported reference to double recovery stemming from voluntary payments and the offer in compromise required the court to consider Mr. Bruette's reports, which the parties had included as exhibits in briefing the motion to strike (but not the motions for summary judgment). This contention, however, contravenes the well-settled principle that "it is [the parties'] obligation, and not [the] Court's, to locate and cite to the appropriate portions of the record that support . . . arguments on summary judgment." *Sloan v. Urban*

11

*Title Servs., Inc.*, 689 F.Supp.2d 94, 99 (D.D.C. 2010) (declining to consider statements of fact in separately filed submissions when resolving a motion for summary judgment). Indeed, the court "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein" when ruling on a summary judgment motion. *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001) (further describing this practice as "consistent with the majority view"); *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 536 F.3d 1343, 1353 (Fed. Cir. 2008) (applying this principle to find that a district court did not err in declining to consider information that "was not presented . . . or cited . . . in connection with th[e summary judgment] motion"). The United States Court of Appeals for the Fourth Circuit has endorsed this approach, previously holding that a district court did not err in declining to consider exhibits that the party "did not direct the Court to [review]." *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 395 (4th Cir. 1994) (internal quotation marks omitted). When a party "effectively [leaves] to the district judge the unenviable task of poring over [voluminous] pages of . . . exhibits in search of bits of evidence that could preclude summary judgment," the court is "well within its discretion in refusing to ferret out

the facts that counsel ha[s] not bothered to excavate." *Id.* at 395-96.

This reasoning directly supports the entry of summary judgment against Mrs. Johnson and the denial of the motion for reconsideration. Having failed on summary judgment to direct the court to any evidence supporting her fleeting reference to concerns of double recovery, Mrs. Johnson cannot now contend that the court ignored its "legal duty" in ruling against her. (ECF No. 103, at 17). The court had no obligation to scour the eighteen exhibits – and hundreds of pages – submitted in support of the motion to strike in order to identify a factual dispute that Mrs. Johnson herself had failed to present with regard to a separate motion. *Cray Commc'ns*, 33 F.3d at 395-96. Thus, there is no manifest injustice in the court's current refusal to consider evidence about potential inaccuracies in Mrs. Johnson's tax liabilities given that she did not bother to bring forth such evidence on summary judgment. *See Gilligan v. Schriro*, No. CV 05-0368-PHX-EHC (MHB), 2007 WL 4181825, at *3 (D.Ariz. Nov. 21, 2007) (denying a motion to reconsider an adverse summary judgment ruling where the defendants failed to cite specific

evidence in their motions papers, but the evidence had been on file with the court in a previously filed motion).[7]

The fact that the court considered admissions in Mrs. Johnson's complaint when ruling on the Governments' summary judgment motion does not alter this conclusion. A movant may rely on the opposing party's admissions in pleadings when moving for summary judgment. *See* Fed.R.Civ.P. 56(c); *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994); *Waterman v. Batton*, 294 F.Supp.2d 709, 715 n.11 (D.Md. 2003), *rev'd on other grounds*, 393 F.3d 471 (4th Cir. 2005). The Government did so here, expressly referencing numerous paragraphs in Mrs. Johnsons' complaint that were relevant to her status as a responsible person and her willfulness in failing to ensure payment of Koba's outstanding payroll taxes. The court subsequently considered these cited paragraphs when granting summary judgment in the Government's favor and against Mrs. Johnson. Thus, the court's reliance on the complaint is not – as Mrs. Johnson

---

[7] According to the motion for reconsideration, this outcome "elevate[s] form over substance." (ECF No. 103, at 15). Such an assertion overlooks not only the case law discussed above, but also language from both the Federal Rules of Civil Procedure and the court's local rules in support of this principle. *See* Fed.R.Civ.P. 56(c)(3) ("*Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record."); Local Rule 105.1 ("Any motion and opposition to a motion shall be . . . accompanied by a memorandum setting forth the reasoning and authorities in support of it.").

asserts – "inconsistent" in any way with its refusal to consider information that neither party presented on summary judgment, (ECF No. 103, at 18), and reconsideration of the judgment against her on this basis is not warranted.

### B. No Error Resulted From the Court's Resolution of the Prior Motions Without Holding Oral Argument

The Johnsons' motion to alter or amend the judgment also indicates that the court erred in not holding a hearing prior to the issuance of its prior memorandum opinion and order. According to the Johnsons, "[h]ad the Court granted a summary judgment argument, . . . arguments [contesting the tax assessments and ultimate judgment] could have and would have been made, and the factual record could have been supplemented with . . . citations" to evidence. (ECF No. 103, at 10). This argument fails for two reasons. First, it overlooks the plain language of Local Rule 105.6, which expressly provides that "all motions shall be decided on the memoranda without a hearing" unless "otherwise ordered by the Court." *See also Cray Commc'ns*, 33 F.3d at 396 ("There is no absolute requirement that a ruling on a motion for summary judgment be preceded by a hearing." (citing Local Rule 105.6)). Second, it misunderstands the purpose of oral argument. Despite essentially acknowledging that their materials failed to present arguments regarding the accuracy of the tax assessments and resulting judgments, the

15

Johnsons contend that the court may have ruled differently if oral argument had been held.  Oral argument, however, is not a device to which parties may turn to avoid summary judgment when their briefing is insufficient.  *Cf. Sakaria v. Trans World Airlines*, 8 F.3d 164, 170 (4th Cir. 2003) ("And while, as probably is always the case to some extent, oral advocacy may have been able to present the [plaintiffs'] position somewhat more forcefully, the issues raised [in the summary judgment motion] were not . . . such that they could only fairly be presented by oral argument.").  Thus, the court did not err in resolving the previously pending motions without holding a hearing.[8]

---

[8] The Johnsons have requested a hearing on their motion for reconsideration.  Their motion indicates that the hearing would allow the court to hear evidence regarding "all the evidence before it," notably, Mr. Bruette's reports.  (ECF No. 103, at 10).  Because consideration of these reports is improper at this late stage of the proceedings and the remaining issues in this motion would not be clarified through a hearing, no hearing is necessary.  *See U.S. Fidelity & Guar. Co. v. Lawrenson*, 34 F.R.D. 121, 123 (D.Md. 1964) ("Granting a hearing in this case would not bring the court's attention to matters which are not already known to it as a result of a study of the papers in this motion [for reconsideration] and close scrutiny of the file in this case[.]"), *aff'd*, 334 F.2d 464 (4th Cir. 1964).

**IV. Conclusion**

For the foregoing reasons, the Johnsons' motion to alter or amend the judgment is denied.  A separate Order will follow.

<pre>
                            _____/s/_____
                            DEBORAH K. CHASANOW
                            United States District Judge
</pre>